**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TAMMAR CANCER,

                              Petitioner,

        - v -                                    Civ. No. 9:07-CV-808
                                                        (TJM/RFT)

ROBERT ERCOLE,

                              Respondent.

**APPEARANCES:**                                **OF COUNSEL:**

TAMMAR CANCER
Petitioner, *pro se*
01-A-4417
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. ANDREW M. CUOMO                    LEILANI J. RODRIGUEZ, ESQ.
Attorney General for the State of New York     Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

     *Pro se* Petitioner Tammar Cancer brings this Petition for a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, on the grounds of (1) ineffective assistance of trial counsel, and (2) ineffective assistance of appellate counsel. Dkt. No. 1, Pet. at pp. 8-9. On May 8 and June 19, 2008, Petitioner filed Motions to Amend his Petition and Stay the Proceedings, respectively, both of which were denied in an Order dated August 21, 2008. Dkt. Nos. 15, 19, & 21. Thus, we address the merits of Cancer's original Petition in this Report-Recommendation and Order and, for the reasons stated

herein, conclude that the Petition should be **DENIED**.

## I. BACKGROUND

### A. Procedural History

On July 27, 2001, Petitioner was convicted in a bench trial of Robbery in the First Degree (N.Y. PENAL LAW § 160.15(1)), Robbery in the Second Degree (N.Y. PENAL LAW § 160.10(1)), and Burglary in the First Degree (N.Y. PENAL LAW § 140.30(2)). Dkt. No. 13-12, Trial Tr., dated May 29-July 27, 2001, at p. 471. Petitioner was sentenced, as a second felony offender, to determinate terms of twenty-five (25) years imprisonment with five (5) years post-release supervision on each of the first degree counts and a determinate term of fifteen (15) years imprisonment with five (5) years post-release supervision on the second degree count, all of which were to run concurrently. *Id.*, Sentencing Tr., dated July 27, 2001, at pp. 4 & 11-13.

Petitioner appealed to the New York State Supreme Court, Appellate Division, Third Department, which affirmed his convictions. *People v. Cancer*, 16 A.D.3d 835, 836 (N.Y. App. Div. 3d Dep't 2005). Petitioner's subsequent application for leave to appeal was denied by the Court of Appeals. *People v. Cancer*, 5 N.Y.3d 826 (2005).

Thereafter, Petitioner made an Application for a Writ of Error *Coram Nobis* in the Appellate Division, claiming that both his trial and appellate attorneys were ineffective. Dkt. No. 13-6, Ex. F, Pet'r *Coram Nobis* Br. On March 19, 2007, the Appellate Division denied Petitioner's *Coram Nobis* Application and the Court of Appeals denied leave to appeal on July 27, 2007. Dkt. No. 13-9, Ex. I, Decision, dated Mar. 19, 2007; *People v. Cancer,* 9 N.Y.3d 863 (2007).

### B. Summary of the Trial Testimony

Against the advice of his trial attorney, Michael Katzer, Esq., Petitioner waived his right to

a jury trial and agreed to allow the Honorable George J. Pulver, Jr., then-Acting Supreme Court Judge for Albany County, to act as the trier of fact and determine the verdict of his case. Trial Tr. at pp. 7-8.

The principle witness for the prosecution was Jada Heath, who testified that she, along with Petitioner, Terrance Faulkner (a/k/a "Maleek Cancer"), and Timothy Walton, went to the Hood Funeral Home in Albany, New York, at 10:00 a.m. on March 28, 1999, intending to steal a safe they were told contained a large amount of money. *Id.* at pp. 158. Heath drove the group to the Funeral Home and, upon arrival, Heath rang the doorbell and was greeted by Floyd Cowan, brother of Harold Hood, the proprietor of the Funeral Home, who told her that Hood was not in. *Id.* at pp. 159-161. Heath returned to the car, where the group waited to see if Cowan would leave the Funeral Home. After twenty (20) minutes passed with no sighting of Cowan, Timothy Walton suggested they enter the Funeral Home while Cowan was by himself, tie him up, and take the safe. *Id.* at p. 162. Thereafter, the group drove to Eric Cancer's house, a relative of the Petitioner, where they waited until about 1:45 p.m., whence they returned to the Funeral Home. *Id.* at pp. 153 & 162-63. Heath again approached the home and rang the doorbell and, again, Cowan answered the door. *Id.* at p. 164. Heath asked to see Hood, and Cowan went back into the house to see if his brother had returned. *Id.* At that point, Petitioner, Faulkner, and Walton got out of the car and walked up the driveway to the back of the Funeral Home. After a few minutes, Heath returned to the car and after fifteen (15) to twenty (20) minutes, Walton came out of the Funeral Home and told her to pull the car into the driveway. *Id.* at pp. 164-67. Shortly thereafter, Petitioner and Walton came out of the back door of the Funeral Home carrying a safe and put it in the trunk of the car. *Id.* at pp. 169-71. When Terrance Faulkner returned to the car with blood on his jacket, he told Heath that Hood

refused to give up the safe's combination, so he had to hit him with a stick. *Id.* at p. 173. Heath testified that the safe was later taken to the home of Yvonne Phillips, a woman who had dated one of Petitioner's cousins. *Id.* at pp. 175-76 & 395.

Nancy Weslowski, who lived across the street from the Hood Funeral Home, testified that around 10 a.m. on March 28, 1999, while taking her dog for a walk, she observed a white car parked outside of her house with one black female and three black males inside. *Id.* at p. 36. Around 2 p.m. that same day, she noticed the same white car parked in front of the Funeral Home. She watched three men get out of the white car and walk toward the Funeral Home and, being suspicious of the car and its passengers, wrote down the license plate number, which she later gave to police. *Id.* at pp. 38-39.

Albany Police Officer Victor Pizzola testified that around 2:30 p.m. on March 28, 1999, he responded to a call from the Hood Funeral Home and upon arrival was told by Cowan that they were robbed and his brother was hurt. *Id.* at pp. 50-52. Officer Pizzola found Hood on the floor of the kitchen, bloodied, his hands tied behind his back with electrical cords. *Id.* at pp. 55-57.

Detective Jeffrey Connery testified that he found a change purse with $36.80 worth of coins inside while performing a search of Heath's car. *Id.* at pp. 77-81. At trial, Floyd Cowan's daughter, Gwendolyn Jackson, identified the purse as belonging to her father. *Id.* at p. 241.

Amy Poutre and Danielle McGrail, both acquaintances of Petitioner's, testified that on March 28 or 29, 2001, Petitioner, Faulkner, and Walton arrived at their house and stayed there for a couple weeks. *Id.* at pp. 128-30 & 275-77. During that time, Poutre observed Faulkner wearing an H-shaped diamond ring and also noticed a set of old silver coins in her home, which were kept in a jewelry box on her dresser. *Id.* at pp. 130 & 133-34. Poutre also testified she heard Petitioner

and Walton talking about Jada Heath being in jail and stating that she better keep her mouth shut. *Id.* at p. 132.

Dr. Carl Rosati testified that he examined Hood in the emergency room of Albany Medical Center on March 28, 1999. *Id.* at p. 330. Hood presented with "blunt force injuries to the head, face, chest, and left upper extremity," several lacerations on his head and face, loss of a thumbnail, several broken ribs, and a liver injury, and remained in the hospital for eight (8) days.[1] *Id.* at pp. 330-31 & 333.

Four witnesses testified on Petitioner's behalf. Kelvin Brown testified that he worked at a U-Haul storage facility in Albany, New York, and saw Petitioner at the facility at approximately 1 p.m. on one weekend day in March 1999,, though he could not remember which weekend it was. *Id.* at pp. 367-70. Detective Kenneth Kennedy, of the Albany Police Department, testified that he investigated the burglary of the Hood Funeral Home and that he went to the home of Yvonne Phillips in search of the safe, but did not find it; however, he saw marks on the linoleum floor in Phillips' kitchen that could have been caused by the dragging of a safe. *Id.* at pp. 385-86 & 390. Kennedy also testified that there was a report that a gun was taken from the Funeral Home, but it was never recovered. *Id.* at p. 379. Yvonne Phillips testified that a safe was never brought into her home and that when the police questioned her in her kitchen, they placed a pair of handcuffs on her table. *Id.* at pp. 395-96. Patricia Thomas, Petitioner's neighbor, testified that Petitioner did not have a reputation for being dishonest nor violent. *Id.* at pp. 402-03.

Petitioner took the stand and testified that from around 9 a.m. to 2 p.m. on March 28, 1999, he was helping his cousin, Marilyn Cancer, move her things into a U-Haul storage facility. *Id.* at pp.

---

[1] Both Hood and Cowan died prior to trial. Trial Tr. at p. 244-45. There was no evidence presented at trial that either death was in any way related to the charges brought against Petitioner and his cohorts. *See generally* Trial Tr.

406-09.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the

state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B. Ineffective Assistance of Trial Counsel

Petitioner asserts that his trial counsel, Michael Katzer, Esq., provided constitutionally deficient representation because he failed to (1) produce a material witness on Petitioner's behalf, and (2) use evidence in his possession to cross-examine Detective Kennedy.  The Appellate Division considered and rejected these claims, finding that Petitioner "failed to demonstrate an absence of strategic or legitimate reasons for counsel's actions," and that "a review of the record, in its totality, reveals that [Petitioner] was afforded meaningful representation from defense counsel." *People v. Cancer*, 16 A.D.3d at 840.

To establish ineffective assistance of counsel, a *habeas* petitioner must show 1) counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) prejudice, i.e., there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[2]  In determining the reasonableness of a counsel's conduct, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland v. Washington*, 466 U.S. at 689.

---

[2] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'"  529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

With respect to Petitioner's first ineffective assistance of trial counsel claim, he asserts that

> Susan Harris, [his] probation officer, informed trial counsel that Petitioner informed her quite some time before Petitioner's indictment and arrest, about [Detective] Kennedy attempting to involve Petitioner in a crime he had nothing to do with. Mrs. Harris also informed trial counsel that she had a meeting with [Detective] Kennedy as well and that she would like to appear before the court during trial on behalf of the Petitioner. Subsequently, during Petitioner's trial, trial counsel stated that Mrs. Harris felt nervous about testifying and was no longer willing to do so. However, it was later discovered that Mrs. Harris was waiting outside the court room to testify but was never called.

Pet. at p. 8.

The Second Circuit has repeatedly stated that "[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess," and therefore, an attorney's "decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (internal quotation marks and citations omitted).  In this case, although Petitioner claims that Katzer should have called Susan Harris as a witness, he does not identify what the purpose or substance of her testimony would have been.  Although Petitioner alludes to a meeting between Kennedy and Harris, he does not state what bearing the testimony about that meeting would have had on his trial.  To the extent the purpose of Harris's testimony would have been to relay statements Petitioner made to her about Kennedy's alleged efforts to pin the crime on him, such testimony would have constituted inadmissible hearsay.  Moreover, any information Petitioner had about Kennedy's alleged effort to set him up could have been brought out during Petitioner's own testimony.  Thus, Katzer's alleged failure to call Harris as a witness did not fall below an objective standard of reasonableness.

Petitioner's second ineffective assistance of trial counsel claim stemming from his representation at trial is that Katzer failed to impeach Kennedy regarding alleged "illegal conduct"

Kennedy used in order to elicit a statement from Jada Heath implicating Petitioner. Pet. at p. 8. Petitioner asserts that Kennedy's testimony at trial that he did not think he *Mirandized* Heath prior to questioning her was inconsistent with his prior testimony at Heath's suppression hearing that he had given Heath the *Miranda* warnings prior to questioning her. R., Ex. B, Pet'r *Pro Se* App. Div. Br. at pp. 18-19. Petitioner also asserts that Kennedy gave testimony at Heath's suppression hearing regarding the circumstances of her interrogation that was specifically contradicted by Heath's attorney at that same hearing. *Id.* at pp. 19-20. According to Petitioner, had Katzer impeached Kennedy with his prior testimony from Heath's suppression hearing, a reasonable doubt would have been created because Heath's oral statement was "fruit of the poisonous tree." *Id.* at p. 20.

Katzer's decision not to impeach Kennedy with his prior inconsistent statement that he had administered *Miranda* warnings to Heath was a reasonable strategic decision. Kennedy's statement at Petitioner's trial that he did not think he *Mirandized* Heath, while allegedly inconsistent with his previous testimony, served to bolster Petitioner's claim that Heath's inculpatory statement and testimony against Petitioner were coerced and therefore unreliable. Also, Petitioner's suggestion that Katzer could have somehow exposed Kennedy's allegedly illegal interrogation procedures used against Heath and thereby have suppressed Heath's testimony at Petitioner's trial is totally off-base. Even assuming Kennedy coerced Heath into making her statement implicating Petitioner, thereby rendering such statement potentially inadmissible as against *Heath*, such coercion would not preclude Heath's separate and voluntary testimony at *Petitioner's* trial, which Heath apparently gave in exchange for a reduced sentence.[3] In that respect, Katzer vigorously cross-examined Heath. Trial Tr. at pp. 184-216. Katzer repeatedly called into question Heath's credibility by asking her about her

---

[3] Petitioner does not allege that Heath's testimony at trial was coerced nor that the prosecutor engaged in any misconduct. *See generally* Pet.

criminal record, made clear that she was testifying against Petitioner as part of a plea bargain with prosecutors and in exchange for a significantly reduced sentence, and highlighted the fact that Heath initially named three different individuals when questioned by police. *Id.* Thus, Katzer's decision not to impeach Kennedy with his prior inconsistent statement constitutes reasonable trial strategy and did not prejudice Petitioner as he was still able to cross-examine Heath as to her motives for testifying against him.

Furthermore, we find that Katzer's overall performance did not fall below constitutional standards. The record shows that while Katzer disagreed with Petitioner's decision to forgo a jury trial, he did his best to create a reasonable doubt in Judge Pulver's mind by undermining the testimony of the prosecution's witnesses on cross-examination. *See, e.g., id.* at pp. 89-98, 137-43, 184-216, & 387-90. Katzer made an extensive argument, supported by a memorandum of law that was submitted during trial, that the bulk of Heath's testimony constituted inadmissible hearsay. *Id.* at pp. 234-39. Also, Katzer moved for a mistrial on two separate occasions based on (1) the prosecution's failure to give notice that the police had previously shown Amy Poutre a photograph of Petitioner, and (2) the prosecution's reference at trial to portions of Hood's medical record that indicated he was hurt during the course of a robbery by three assailants. *Id.* at pp. 104-13 & 325-27. Finally, after the prosecution rested, Katzer made a motion for dismissal of the charges as a matter of both fact and law, asserting that the elements of the crime had not been established. *Id.* at pp. 341-53.

Therefore, we find that Katzer's representation did not fall below an objective standard of reasonableness, and as such, we need not discuss whether Petitioner was prejudiced under the second prong of the *Strickland* test. *Strickland v. Washington*, 466 U.S. at 697. Because the Appellate

Division did not unreasonably apply settled federal law when it found Petitioner received effective assistance of trial counsel, we recommend that *habeas* relief be **denied** on this ground.

### C.  Ineffective Assistance of Appellate Counsel

Petitioner asserts that his attorney on appeal, Theresa M. Suozzi, Esq., violated his Sixth Amendment right to effective representation when she failed to raise on appeal trial counsel's (1) "failure to file a motion to dismiss [the] defective indictment based on defective grand jury proceedings" and (2) "failure to file a motion to suppress illegally obtained evidence by [Detective] Kennedy." Pet. at p. 9.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel as well. *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert. denied*, 508 U.S. 912 (1993). Thus, Petitioner must demonstrate that the representation provided by appellate counsel (1) fell below an objective standard of reasonableness, and (2) that he would have likely been granted a new trial but for appellate counsel's defective representation. *Mayo v. Henderson*, 13 F.3d 528, 536 (2d Cir. 1994). The same presumption of reasonable professional assistance that is granted to trial counsel is also bestowed upon appellate counsel. *Jennings v. United States*, 2007 WL 2027908, at *5 (N.D.N.Y. July 11, 2007). In that respect, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d at 533.

Petitioner's first claim is that appellate counsel should have raised trial counsel's failure to move to dismiss the Indictment because the prosecutor allegedly withheld information about Danielle McGrail's plea bargain when she testified before the grand jury. The Appellate Division summarily rejected this claim, which Petitioner raised in his *Coram Nobis* Application. R., Ex. I.

*-11-*

Even assuming that the prosecutor did not identify the fact that McGrail was testifying as part of a plea bargain at the grand jury proceedings,[4] under New York law, a prosecutor's duty of fair dealing does not include the duty to disclose the fact of a witness's plea bargain or grant of immunity to the grand jury. *See People v. Bartolomeo*, 126 A.D.2d 375, 396 (App. Div. 2d Dep't 1987) ("The fact that the Grand Jury was not informed of the promises of immunity made to [prosecution witnesses] does not affect the validity of the proceedings since such evidence merely related to the witnesses' credibility."). Nor was Petitioner prejudiced by any such alleged failure because McGrail testified at Petitioner's trial and Katzer aggressively cross-examined her regarding her plea bargain, and thus, her credibility. Trial Tr. at pp. 289-292. Therefore, Suozzi's decision not to include this clearly meritless claim as a ground for relief in Petitioner's direct appeal did not fall below an objective standard of reasonableness.

Petitioner's second claim of ineffective assistance of appellate counsel is that Suozzi should have brought a claim for ineffective assistance of trial counsel based on Katzer's failure to file a motion to suppress evidence allegedly illegally obtained by Detective Kennedy. Pet. at p. 9. Petitioner's argument appears to be that because Detective Kennedy allegedly coerced Heath's inculpatory pre-trial statement against Petitioner, Katzer should have moved to suppress such statement at trial. However, the prosecution did not attempt to enter into evidence Heath's allegedly coerced statement, rather, Heath herself testified against Petitioner at trial. As such, Petitioner had the opportunity to cross-examine Heath and his Confrontation Clause rights under the Sixth

---

[4]As Respondent points out, the record is not clear on that point. Petitioner attached a partial transcript of the grand jury proceedings to his *Coram Nobis* Application, which was included in the State Court Records submitted to this Court by Respondent. R., Ex. G, Grand Jury Tr., dated Apr. 27, 2000. However, that transcript is incomplete and does not reveal whether or not the prosecutor made known the fact of McGrail's plea bargain during the grand jury proceedings. *See id.* at pp. 23-24.

Amendment were not violated. *See Bruton v. United States,* 391 U.S. 123, 127 (1968). Katzer had no basis to preclude Heath's testimony, only to cross-examine her in order to undermine her credibility and truthfulness, which he did vociferously. Trial Tr. at pp. 184-216. For that reason, appellate counsel's decision not to challenge Petitioner's conviction on that ground did not fall below an objective standard of reasonableness. Again, having found Petitioner's ineffective assistance of counsel claim fails under the first prong of the *Strickland* standard, we need not address the second prong. *Strickland v. Washington*, 466 U.S. at 697.

Therefore, because the Appellate Division's decision rejecting these claims did not constitute an unreasonable application of federal constitutional principles, we recommend that the Petition be **denied** on these grounds.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should be issued with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   February 5, 2010
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge